IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEBRA FOX BENTON, *et al.*, ) | CASE NO.: 1:15 CV 541 |
| Plaintiffs, ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| M3 MOTORS, INC., *et al.*, ) | |
| ) | <u>MEMORANDUM OPINION</u> |
| ) | <u>AND ORDER</u> |
| Defendants. ) | |

This case is currently before the Court on Defendant M3 Motors, Inc.'s . Motion for Judgment on the Pleadings. (ECF # 12). M3 Motors moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12©. Plaintiff filed a Brief in Opposition to the motion (ECF # 14), and M3 Motors filed a Reply Brief in support of its motion. (ECF #15). The matter is now fully briefed and ready for disposition. Having reviewed the briefs and fully analyzed the facts and law applicable in this case, Defendant M3 Motor's Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part.

**STANDARD OF REVIEW**

The standard of review applicable to a motion for judgment on the pleadings under Rule 12(c) is the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). Dismissal on a Rule 12(b)(6) or 12(c) motion is appropriate only if "the factual allegations contained in the complaint, accepted as true, do not show that the pleader is entitled to relief." *Hill v. Mr. Money Finance Co. & First Citizens Banc Corp.*, 309 Fed. Appx. 950, 955 (6th Cir. 2009).

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). When a claim is based upon a contract attached to the complaint, Fed. R. Civ. Pro. 10(c) provides that the document is "part of the complaint for all purposes, including the purpose of determining what the complaint alleges." *Realtek Indus., Inc. V. Nomura Sec.*, 939 F.Supp. 572, 575 n.1 (N.D. Ohio 1996). If a plaintiff fails to attach an instrument or contract to his complaint, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Weiner, D. P.M. v. Klais and Co.,* 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.; see also, Greenberg v. The Life Ins. Co. Of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)(holding that "the defendant may submit an authentic copy to the court to

be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.")(citation omitted).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." *Jones v. City of Carlisle, Ky.*, 3 F.3d. 945, 947 (6th Cir. 1993) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl' Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## **FACTS**[1]

---

[1] The facts as stated in this Memorandum and Order are taken from Plaintiff's Complaint and should not be construed as findings of this Court. In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

Plaintiff, Debra Fox Benton, purchased and financed a used car from Defendant M3 Motors, doing business as Airport Infiniti, on February 14, 2014.  She signed a Retail Installment Sale Contract ("RISC") which identified Airport Infiniti as the Creditor-Seller and included Federal Truth in Lending Disclosures.  Her father, Plaintiff Eulace Fox, co-signed the on the loan.  Approximately one month after signing the RISC, M3 Motors contacted Ms. Benton and told her that it was revoking its extension of credit and that she has to bring the vehicle back or enter into a new agreement with different terms.  After entering into the agreement, after Ms. Benton sold her prior vehicle, and just prior to the due date of her first payment under the installment agreement, M3 Motors placed several calls to her telling her she had to return the newly purchased car.  M3 Motors threatened repossession and "other trouble" if Plaintiff did not return the car or enter into a revised RISC with different financing terms.

Ms. Benton, believing she had no other option, returned the car to M3 Motors, and this car was re-sold to another customer.  M3 Motors originally refused to return Ms. Benton's down payment of $5,000.00.  After she retained counsel and incurred expenses including attorneys fees, rental car costs and losses related to the sale of her prior vehicle, Defendants finally returned the down payment money.  She now brings claims against M3 Motors for violations of the Truth in Lending Act ("TILA"), the Equal Credit Opportunity Act ("ECOA"), the Ohio Consumer Sales Practices Act ("OCSPA"), and the Ohio Uniform Commercial Code ("U.C.C."). She seeks actual and statutory damages, plus attorney fees, punitive damages and costs.

The Complaint included a copy of the Retail Installment Sale Contract which identifies the Plaintiff as buyer, her father as co-buyer, and Airport Infinity as the Creditor-Seller.  The contract includes a provision that states "if checked, a limited right to cancel applies."  This box

does not appear to be checked.  The limited right to cancel provision, when applicable gives the seller the right to cancel the contract within a stated amount of time if they are unable to assign the contract.   The contract marks this provision "N/A."  The contract indicates that the "seller assigns its interest in the contract to Ally Financial," without or with limited recourse.  Nothing in the contract appears to indicate that this statement is either provisional or conditional.

## **ANALYSIS**

Defendant's Motion to Dismiss relies in part on the language contained in a "Buyer's Order" allegedly signed on the same day as the RISC attached to the Complaint.  The Buyers Order is not attached to the Complaint, however, Defendants argue that it should be considered because it forms "the basis for the transaction at issue."  The Buyer's Order, however, constitutes evidence outside the complaint and is not appropriately considered by the Court at this stage in the litigation.  Further, it is silent on the financing terms and agreements which form the basis of the Plaintiffs' claims.  Although "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim,"   Plaintiffs refers to the Buyers Order only in passing in their Complaint,[2] and they do not rely on it as the basis for any of their claims. *Weiner, D. P.M. v. Klais and Co.,* 108 F.3d 86, 89 (6th Cir. 1997).  Further, the RISC states that "[t]his contract contains the entire agreement between [the parties] relating to this contract" and nowhere in the RISC does it

---

[2] The Buyer's Order, gap insurance agreement, gap insurance addendum, and temporary tag registration applications are mentioned in the Complaint, as documents prepared by the Defendants in connection with the sale.  They, however, do not form the basis for any of the claims in Plaintiffs' Complaint.  The claims all center around the financing terms and agreement set forth in the RISC.

incorporate or reference the Buyer's Order.³ Therefore, the Buyer's Order will not be considered in determining whether judgment on the pleadings is warranted under Fed. R. Civ. P. 12©.

A. Truth in Lending

Defendant argues that the Plaintiffs' Truth in Lending Claim fails as a matter of law because the Complaint alleges a subsequent act or occurrence rendered the TILA disclosures inaccurate. ⁴ Even if the Court accepts as true that an inaccuracy in TILA disclosures is not a violation of TILA "[i]f a subsequent act or occurrence renders inaccurate TILA disclosures which were accurate at the time they were made," Defendant's characterization of the allegations in the Complaint do not support judgment as a matter of law on this issue. Plaintiffs do not

---

³

Further, even it the Court were to consider it, the Buyer's Order does not alter the terms of the RISC, rather it purports to incorporate it in the sales agreement. Defendants rely on a segment of the Buyer's Order that specifies: "If this vehicle is delivered prior to finance approval purchaser understands that if third party financing approval or assignment of a retail installment sales contract is not obtained, purchaser and/or dealer may cancel the purchase contract and purchaser must immediately return the vehicle to the dealership in accordance with this agreement. The ... retail installment sales contract incorporated herein." It could be argued, however, that on the face of the RISC it appears that the finance approval had already been granted by Airport Infinity and an assignment to Ally Financial had already been obtained before the vehicle was delivered.

⁴

In a footnote M3 Motors also disputes that they are a creditor for purposes of TILA. Apparently recognizing that this is a disputed question of fact and not a sufficient basis for judgment on the pleadings it does not raise this as an actual argument in its brief. Plaintiffs however do address this assertion. The question of whether M3 Motors was a creditor as defined by TILA under the circumstances of this case is a question of fact that is not appropriate for determination on a motion to dismiss. As the Complaint sets forth sufficient facts to allege M3 Motors acted as a creditor in this case, the Court must accept this allegation as true for purposes of this motion.

allege, contrary to the Defendant's characterization, that "conditional financing that was set forth in the RISC fell through." Paragraph 19 of the Complaint, cited by Defendant in support of this statement, actual alleges that Defendants violated TILA and Regulation Z because "at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or revocation at Defendants' sole and arbitrary discretion." None of the cases cited by Defendant address a situation where a creditor, who has disclosed the terms of credit it has offered to the buyer has been allowed to unilaterally and arbitrarily change the terms under which the credit was offered. In every case cited by Defendants there was a express condition qualifying the financing and TILA disclosures.

Looking at the Complaint and RISC in this case, there does not appear to be any such express condition based on the face of these documents. The Complaint clearly states a cause of action under TILA, and considering the pleadings in a light most favorable to the Plaintiffs nothing in the Complaint or the documents attached to the Complaint shows as a matter of law that such a claim is without merit. Therefore, Plaintiffs are entitled to offer evidence to support the TILA claims made in their Complaint.

B. Equal Credit Opportunity Act

M3 Motors contends that as an automobile dealership, it can only be liable under the anti-discrimination and anti-discouragement provisions of the ECOA. It bases this argument on court holdings which have found that "when a dealership acts as a liaison between consumers and lenders, referring credit applications to lenders, the dealership in that capacity is a creditor under the ECOA only with respect to the anti-discrimination and anti-discouragement provisions."

*Salvagne v. Fairfield Ford, Inc*., 794 F.Supp. 2d 826, 836-8367 (S.D. Ohio 2010)(citing 12 C.F.R. Pt. 202, Supp. I; *Treadway*, 362 F.3d at 979-80; *Chastain*, 2009 U.S. Dist. LEXIS 65258, 2009 WL 1971621 at *7).

The Complaint, however, alleges that in this case M3 Motors was a creditor and not simply a liaison between Plaintiffs and a lender. The RISC attached to the Complaint also lists Defendant as the creditor. Defendant's assertion that M3 Motors did not fit the definition of creditor under the ECOA because it did not regularly extend, renew, or continue credit, and did not regularly participate in a credit decision, including setting the terms of the credit, is a factual allegation that contradicts the allegations in the Complaint and must, therefore, be disregarded for purposes of deciding a motion for judgment on the pleadings. Defendant's motion for judgment on the pleadings with regard to Plaintiffs' ECOA claim is, therefore, denied.

C. Ohio Consumer Sales Protection Act

Defendant, M3 Motors seeks dismissal of Plaintiffs' OCSPA because it claims the Buyer's Order "specifically explained the parties' obligations in the event that financing failed." (ECF #12 at 11). As explained above, however, the Buyer's Order is evidence that cannot be considered at this stage of the litigation. Further, even if the Buyer's Order becomes relevant to the issues in this case, the terms of the Buyer's Order, read in conjunction with the RISC does not undisputedly establish on its face that there were any contingency in the financing offer or that any obligations remained on the part of the buyer after the financing agreement was signed. Therefore, Defendant's motion for judgment on Plaintiffs OCSPA claim is denied.

D. <u>Uniform Commercial Code</u>

Plaintiff has raised a claim under O.R.C. § 1309.601, which governs the procedures that must be followed when a secured party seeks to recover goods following a default by a creditor, and/or when collateral is disposed of following repossession. Defendant argues that the uniform commercial code claims are inapplicable to this case based on the allegations set forth in the Complaint, and that because Ms. Benton returned the car there cannot be a repossession only a "cancelled transaction." The return of the car, or an collateral, by a creditor, following threats of repossession and "other trouble" as alleged in the Complaint, can be a repossession and does not necessarily equate to a voluntary cancellation of the transaction. That said, not every reclaiming of goods falls under the provisions of the U.C.C..

The Complaint does not allege any default that would justify repossession or otherwise trigger the application of the U.C.C.'s collateral disposal provisions. It does, however, allege that Defendants were a secured creditor, that they threatened repossession of the vehicle in order to induce Ms. Benton into returning the car, that Defendants disposed of the car without providing proper notifications in violation of the law, and that this caused Ms. Benton to suffer actual financial damages. They do not allege that the "repossession" was the result of a real or perceived default under the terms of the financing or purchase agreement, or that the "repossession" was aimed at recovering collateral under the terms of a U.C.C. agreement. At one point Plaintiffs argue that the U.C.C. claim should survive because Defendants' "repossession" was "an inappropriate conversion of property." This may be an more accurate description of the actual harm alleged. There is, however, no claim for conversion in the Complaint, and the allegations do not fall within the scope of the transactions covered by the

U.C.C. requirements for disposition of collateral.  The U.C.C. claim is, therefore, dismissed for failure to state a claim upon which Plaintiffs are entitled to relief.

## **CONCLUSION**

For the reasons set forth above, Defendant, M3 Motors, Inc.'s Motion for Judgment on the Pleadings (ECF #12) is GRANTED in part and DENIED in part.   The U.C.C. claim set forth in Count Four of the Complaint is dismissed.  All other claims remain pending.  The status conference previously set for November 4, 2015 at 9:30 a.m. is re-scheduled for November 18, 2015 at 9:30 a.m .  IT IS SO ORDERED.

                                              /s/ Donald C. Nugent
                                              Donald C. Nugent
                                              United States District Judge

Date:   October 5, 2015